# CALIFORNIA STATE BOARD OF EQUALIZATION
## ET AL. *v.* CHEMEHUEVI INDIAN TRIBE

No. 85–130.   Decided November 4, 1985

10

PER CURIAM.

Since 1959 California has imposed an excise tax on the distribution of cigarettes. Respondent Chemehuevi Indian Tribe sells cigarettes on its reservation in southeastern California. The Tribe originally remitted the state tax to petitioner State Board of Equalization (petitioner) insofar as that tax was imposed on the distribution of cigarettes to non-Indian purchasers. But in 1977 the Tribe enacted a cigarette tax of its own that was the equivalent of the California tax, and then ceased collecting and remitting the state tax. When California sought to obtain the unremitted tax from the Tribe, the Tribe brought an action in the United States District Court for the Northern District of California requesting a declaratory judgment that petitioner could not lawfully apply the state tax to cigarettes sold by the Tribe to non-Indian purchasers. Respondent Tribe also sought an injunction preventing petitioner from enforcing the state cigarette tax against it. Petitioner counterclaimed for damages in the amount of back taxes claimed to be owed by respondent Tribe.

The District Court held that petitioner's counterclaim was barred by sovereign immunity, 492 F. Supp. 55 (1979), but also held that California could lawfully require the Tribe to collect cigarette excise taxes imposed on cigarettes that it sold to non-Indians. On appeal, the Court of Appeals affirmed the first determination, but reversed the second. 757 F. 2d 1047 (CA9 1985).

The Court of Appeals observed that, unlike the Washington statute that we considered in *Washington* v. *Confederated Tribes of Colville Indian Reservation*, 447 U. S. 134 (1980), California's cigarette tax statute "does not contain any . . . *explicit* 'pass-through' language," 757 F. 2d, at 1056 (emphasis added), and that therefore the question of the legal incidence of the California cigarette tax was not controlled by our decision in that case. *Id.*, at 1055–1056. It went on to observe that a "legislative intent to impose even a collection

burden should be *explicitly* stated." *Id.*, at 1056, n. 11 (emphasis added). The Court of Appeals concluded that the California excise tax, properly construed, did not impose liability on the ultimate purchaser of cigarettes when the vendor was not a taxable entity. *Id.*, at 1057, and n. 13.

We think that the Court of Appeals applied a mistaken standard in determining whether or not the California tax on cigarettes was sufficiently like the Washington tax involved in *Colville* so that the result in the latter case should be controlling here. None of our cases has suggested that an express statement that the tax is to be passed on to the ultimate purchaser is necessary before a State may require a tribe to collect cigarette taxes from non-Indian purchasers and remit the amounts of such tax to the State. Nor do our cases suggest that the only test for whether the legal incidence of such a tax falls on purchasers is whether the taxing statute contains an express "pass on and collect" provision. Indeed, the Washington statute in *Colville* did not contain an express pass-through provision; the conclusion of the District Court in that case, which we accepted, was that the statutory scheme required consumers to pay the tax whenever the vendor was untaxable, and thus the legal incidence of the tax fell on purchasers in such cases. 447 U. S., at 142, and n. 9. The test to be derived from cases such as *Colville* and *Moe* v. *Confederated Salish and Kootenai Tribes*, 425 U. S. 463, 481–483 (1976), is nothing more than a fair interpretation of the taxing statute as written and applied, without any requirement that pass-through provisions or collection requirements be "explicitly stated." Cf. *United States* v. *Mississippi Tax Comm'n*, 421 U. S. 599, 607–608 (1975).

We think the fairest reading of California's cigarette scheme as a whole is that the legal incidence of the tax falls on consuming purchasers if the vendors are untaxable. California Rev. & Tax Code Ann. § 30107 (West 1979) clearly seems to place on consumers the obligation to pay the tax for all previously untaxed cigarettes. The Board's implement-

ing regulation does not restrict this obligation to the hypotheticals contained in the regulation; it merely indicates that the consumer has a duty to pay any tax directly to the Board when the vendor is the type of entity on which the State cannot impose a collection requirement. See Cal. Admin. Register 72, No. 16, Tit. 18, Art. 16, § 4091. The regulation does not address itself to the question of legal incidence. And since both *Colville* and *Moe* hold that if the legal incidence of a state excise tax falls on non-Indian purchasers, the State may impose on the tribe the burden of collecting that tax from the purchasers, 447 U. S., at 159; 425 U. S., at 482–483, this particular regulation is inapplicable to purchasers from Indian tribes if the ultimate liability for the tax falls on the purchaser when the vendor is not taxable. We think that in the context of the entire California statutory scheme, interpreted without any of the restrictive requirements which the Court of Appeals employed, Cal. Rev. & Tax Code Ann. § 30108(a) (West 1979) evidences an intent to impose on the Tribe such a "pass on and collect" requirement. We hold that the legal incidence of California's cigarette tax falls on the non-Indian consumers of cigarettes purchased from respondent's smoke shop, and that petitioner has the right to require respondent to collect the tax on petitioner's behalf.

The petition for certiorari is granted on the first three questions it presents. Insofar as the Court of Appeals held that respondent might not be required to collect the cigarette tax imposed by California on non-Indian purchasers at tribal smoke shops, its judgment is

*Reversed.*

JUSTICE BRENNAN would deny certiorari.

JUSTICE MARSHALL dissents from this summary disposition, which has been ordered without affording the parties prior notice or an opportunity to file briefs on the merits. See *Maggio* v. *Fulford,* 462 U. S. 111, 120–121 (1983) (MAR-

SHALL, J., dissenting); *Wyrick* v. *Fields*, 459 U. S. 42, 51–52 (1982) (MARSHALL, J., dissenting).

JUSTICE BLACKMUN would grant certiorari and give the case plenary consideration.

JUSTICE STEVENS, dissenting.

The courts of appeals are better qualified to decide questions of state law than is this Court. Most circuit judges formerly practiced in States within their respective circuits. As judges, they must confront state-law issues on a regular basis. For these reasons, it has long been the settled practice in this Court to show the greatest deference to opinions of the courts of appeals on questions of state law. "In dealing with issues of state law that enter into judgments of federal courts, we are hesitant to overrule decisions by federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable." *Propper* v. *Clark*, 337 U. S. 472, 486–487 (1949). See also *Haring* v. *Prosise*, 462 U. S. 306, 314, n. 8 (1983) ("a challenge to state-law determinations by the Court of Appeals will rarely constitute an appropriate subject of this Court's review"); *Leroy* v. *Great Western United Corp.*, 443 U. S. 173, 181, n. 11 (1979) ("it is not our practice to re-examine state-law determinations of this kind"); *Bishop* v. *Wood*, 426 U. S. 341, 345–347 (1976), and cases cited therein.

The outcome of this case depends entirely on an interpretation of the California Revenue and Taxation Code. I am not prepared to say that the Court of Appeals' construction of the California Code is correct or incorrect.[1] I am prepared,

---

[1] The Court of Appeals summarized its construction of the California statute as follows:

"Upon careful examination, it is apparent that section 30108(a) is merely a procedural section that denotes the manner in which a vendor shall collect a tax from a purchaser if and when the purchaser is obligated to pay the tax. In the case of a sale with respect to which 'the [usual cigarette] tax imposed by Section 30101 is inapplicable,' the vendor is required to collect the tax from the purchaser either (a) at the time of sale, if the purchaser is

14

however, to disagree with the Court's conclusion that we should undertake to decide the state-law question in a case of this kind. Even if the Court is correct in its view that the Court of Appeals applied a mistaken standard in construing the California tax,[2] that premise does not justify the action of the Court today in undertaking to decide the state-law issue on its own—particularly when that issue has not been fully briefed and argued. At most, the Court should remand the case to the Court of Appeals for a reconsideration under the proper standard. Such a remand would at least demonstrate that this Court has not forgotten that "federal judges who deal regularly with questions of state law in their respective districts and circuits are in a better position than we" to interpret state law. *Butner* v. *United States*, 440 U. S. 48, 58 (1979). Because the Court's summary disposition conveys a different message, I respectfully dissent.

---

then obligated to pay the tax, or (b) if the purchaser is not then obligated to pay the tax, at the time the purchaser becomes so obligated. Cal. Rev. & Tax. Code § 30108(a) (West 1979). Collection by the vendor is mandatory, but only if and when the purchaser has a tax obligation. The section does not contain any substantive provisions that themselves impose any tax or that indicate when section 30101 is inapplicable. Nor does it specify under which situations a purchaser is obligated to pay the tax at the time of sale or, if the purchaser is not then obligated, when the purchaser becomes so obligated. We find no language in section 30108—the only section on which the Board relies for its argument that the incidence of the tax falls upon the purchaser—that remotely suggests a legislative intent to have the purchaser pay the tax whenever the vendor is a non-taxable entity." 757 F. 2d 1047, 1056–1057 (CA9 1985) (footnotes omitted).

[2] The portion of the Court of Appeals opinion which I have quoted in n. 1, *supra*, suggests that the Court of Appeals would have reached the same conclusion even if it had not used the unfortunate word "explicit" earlier in its opinion.